671 So.2d 1069 (1996)
Mabel Ebert NICHOLS, Plaintiff-Appellee,
v.
Walter R. NICHOLS, Jr., Defendant-Appellant.
No. 95-1290.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
*1070 Gary W. Sheffield, Alexandria, for Walter R. Nichols Jr.
Dan E. Melichar, Alexandria, for Mabel Ebert Nichols.
Before KNOLL, THIBODEAUX and WOODARD, JJ.
THIBODEAUX, Judge.
This appeal arises from the community property partition proceeding commenced by Walter Reed Nichols. Assigning three errors, plaintiff-appellant challenges the community interest computations derived by the lower court. We amend and affirm for the following reasons.

FACTS
Mabel and Walter Nichols wed on July 4, 1974. During the course of their nine year union, the couple purchased two community homes in Alexandria, Louisiana. The first home was located at 17 Tennessee Avenue, the second at 2108 Kelly Street.
On April 29, 1983, Walter Nichols filed a petition for separation under La.Civ.Code art. 140, a provision repealed by the Louisiana legislature in 1990. When judgment was rendered upon Walter's petition, the couple's community of acquets and gains ended (by operation of law) retroactively from the April 29, 1983 filing date; however, neither Walter nor Mabel filed to partition their community until May 21, 1990. Moreover, this partition suit was not tried until February 18, 1993 nearly ten years after the couple's legal regime ended. Observing this 10 year delay, the trial judge remarked:
Each of the parties, through no fault of their own, had to change attorneys one or more times. The matter was not tried until February 18, 1993, ten years after termination. Needless to say, the testimony at trial was inconclusive on many issues. The parties could no longer recall important details and records had been lost.
On April 28, 1995, the trial court rendered its judgment; therein, the court decreed that the Nichols' community consisted of:

1) house & lot at 17 Tennessee Avenue Alexandria, Louisiana...... $25,000.00
2) house & lot at 2108 Kelly Street Alexandria, Louisiana........ $25,000.00
3) rent collected, Tennessee Avenue property..................... $15,379.39
4) rent collected, Kelly Street property......................... $22,330.00
5) checking account, Rapides Bank & Trust........................ $ 1,177.62
 ============
 TOTAL............................................ $ 88,887.01

The court adjudged each party's community interest to be:

 Walter Mabel
1) community assets............................... $44,443.50 $44,443.50
2) reimbursement owed............................. $ 6,373.15 $ 2,300.00
3) reimbursement due.............................. ($ 2,300.00) ($ 6,373.15)
 ============== =============
TOTAL............................................. $48,516.65 $40,370.35

Further, in satisfying each party's community interest, the court awarded:

*1071
Mabel:
1) total community assets due..................................... $40,370.35
2) house & lot: 17 Tennessee Avenue.............................. ($25,000.00)
3) rent collected: 17 Tennessee Avenue............................ ($15,379.39)
 =============
TOTAL ............................................ ($ 9.04)
Walter:
1) total community assets due..................................... $48,516.65
2) house & lot: 2108 Kelly Street................................. ($25,000.00)
3) rent collected: 2108 Kelly Street.............................. ($22,330.00)
4) Rapides Bank checking account.................................. ($ 1,177.62)
 =============
TOTAL.................................................. $ 9.03

Accordingly, the trial court ordered Mabel to pay Walter $9.03 to offset the difference between each party's partition total. In this appeal, Walter insists that the trial court erred in:
(1) failing to credit Walter for expending his separate property to pay community debts (i.e. mortgage payments, taxes, upkeep & insurance);
(2) assessing rent against Walter for possessing the couple's Kelly Street property during the period between community termination (4/29/83) and community partition (2/18/93); and
(3) failing to properly calculate each party's community property interest.
Mabel has neither answered nor appealed.

LAW & DISCUSSION

Mortgage Payments
Insofar as Walter's first assignment is concerned, the record reflects that he spent separate funds in the amount of $4,600.00 to purchase the Kelly Street property, $4,638.79 to pay the mortgage note on Kelly, and $3,507.52 to pay taxes, insurance, and repair costs on Kelly. La.Civ.Code art. 2367 provides:
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
In response to Walter's Article 2367 claim for reimbursement, the trial court divided $12,746.30 (sum of the foregoing figures) by two and awarded Walter $6,373.15. Walter finds error in the trial court's tabulations and specifically contends that from May 1983 to June 1993, the latter date being the month in which the Kelly Street mortgage was retired, appellant spent $17,612.27 on mortgage payments alone.
In grappling with the amount of separate funds Walter spent on retiring the Kelly Street mortgage, the trial court observed:
Walter testified that he paid the mortgage note on Kelly Street, $3507.52 in repairs and taxes and insurance. He failed to introduce any evidence of the amount of taxes and insurance and only testified he paid "about" $146.00 monthly on the mortgage note, without saying for how many months the note was paid. Mabel, however, testified, and her detailed descriptive list showed, that there was a mortgage note for $4638.79 owed to [Hibernia National Bank] on Kelly Street and Mabel never paid any of this. Thus, the court will conclude this was the amount paid by Walter. He is entitled to reimbursement of one half of ... $4638.79.
Walter now claims that his testimony and detailed descriptive list indicate an expenditure *1072 of $17,612.27. We disagree. Walter's descriptive list recites the same $4,638.79 figure recounted in Mabel's descriptive list, and, like the trial court, we find Walter's testimony alone, without supporting documentation, inadequate proof. Moreover, Walter's assertion that he paid approximately $13,000.00 more on an extinguished principal obligation is hardly tenable.
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Lewis v. State, Through Dept. of Transp. & Dev., 94-2730 (La. 4/21/95), 654 So.2d 311. The facts of this case clearly evince that the trial court's conclusion as to Walter's mortgage payments was reasonable based upon the evidence; therefore, such determination is neither manifestly erroneous nor clearly wrong.

Rental Assessment
The trial judge assessed and awarded Walter $22,330.00 in rental collections on the Kelly Street property because Walter possessed the house in the period between community termination (4/29/83) and community partition (2/18/93). The amount was derived by charging Walter $55.00 rent for the first six (6) months and $200.00 rent for the remaining one-hundred ten (110) months. Walter insists that the trial court erred in charging any rental assessment at all. We disagree.
The statutory authority for assessing rent against an occupying spouse during the time of her/his exclusive use and occupancy of the family home is found in La.R.S. 9:374(C), which provides:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court. (emphasis supplied).
Consistently this court has ruled that, under La.R.S. 9:374(C), the decision to award rent to a non-occupant spouse rests soundly within the trial court's discretion. Rozier v. Rozier, 583 So.2d 87 (La.App. 3 Cir.1991); LeBlanc v. LeBlanc, 490 So.2d 763 (La.App. 3 Cir.), writ denied, 494 So.2d 332 (La.1986). Moreover, where the facts so warrant, the trial court enjoys vast discretion to devise rental assessments under La.R.S. 374(C). See Landwehr v. Landwehr, 547 So.2d 752 (La.App. 4 Cir.1989). The most frequently occurring factual scenario for which we condone rental assessments arises where the separate estate of the occupying spouse is benefitted from her/his rent-free occupancy of the community home.
In Patin v. Patin, 462 So.2d 1356 (La.App. 3 Cir.), writ denied, 466 So.2d 470 (La.1985), Mr. Patin was forced to pay rent for his lodging while his ex-wife occupied their former community home rent-free. To the advantage of her separate estate, Mrs. Patin invested funds that would otherwise have been used to pay rent. Likewise, in Mara v. Mara, 513 So.2d 1220 (La.App. 4 Cir.1987), writ denied, 517 So.2d 813 (La.1988), Mrs. Mara was forced to rent an apartment while her husband initially occupied the family home without paying rent. Thereafter, Mr. Mara leased the family home and, thereby, collected rental payments that inured to the benefit of his separate estate. Upon partitioning the community, both courts concluded that, under these circumstances, the occupying spouse must pay rent because each garnered profits for their separate estates as a consequence of their rent-free occupation of the community home.
When crafting its rental assessment in the case sub judice, the lower court observed:
Mabel contends Walter should pay rent for the use of Kelly Street from May 1983 to February 1993. The Court agrees.Walter owned as separate property two other rent houses, but continued to use the community rental property for himself. In this manner, he was able to provide himself and his child with housing and make money for his separate estate.

*1073 Under these circumstances, he should pay rent. (emphasis ours).
Based upon the record before us, we do not find that the trial court abused its discretion. Accordingly, this portion of the judgment is affirmed.
Notwithstanding our foregoing analysis of appellant's susceptibility to rental assessments, we find that the trial judge did err mathematically in tabulating Walter's rental assessment/collection sum. The lower court should have multiplied $200.00 by 112 months rather than 110.[1] Although appellant failed to assert this mathematical error, La.Code Civ.P. art. 2164 compels this court to render any judgment that is just, legal and proper upon the appellate record; therefore, the Kelly Street rent collections are increased by $400.00, viz:

 The Nichols' Community
1) house & lot at 17 Tennessee Avenue Alexandria, Louisiana........ $25,000.00
2) house & lot at 2108 Kelly Street Alexandria, Louisiana.......... $25,000.00
3) rent collected, Tennessee Avenue property....................... $15,379.39
4) rent collected, Kelly Street property...................... $22,730.00
5) checking account, Rapides Bank & Trust........................ $ 1,177.62
 ===========
 TOTAL............................................ $89,287.01

We also recognize that the trial court erred in apportioning the entire rental collection sums to the spouses during apportionment. That is, each spouse should have received half the rent collected at each community home during the period between community termination and partition. See Derouen v. Derouen, 496 So.2d 1341 (La.App. 3 Cir. 1986)reversed on other grounds, 502 So.2d 105 (La.1987). The trial court should have yielded:

 Each Party's Community Interest
 Walter Mabel
1) community assets................................ $44,643.50 $44,643.50
2) reimbursement owed............................. $ 6,373.15 $ 2,300.00
3) reimbursement due.............................. ($ 2,300.00) ($ 6,373.15)
 ============= =============
TOTAL................................... $48,716.65 $40,570.35
 Apportionment Against Community Interest
Mabel:
1) total community assets due..................................... $40,570.35
2) house & lot: 17 Tennessee Avenue.............................. ($25,000.00)
3) rent collected: 17 Tennessee Avenue............................ ($ 7,689.70)
4) rent collected: 2108 Kelly Street................................ ($11,365.00)
 =============
TOTAL ..................................................... ($ 3,484.35)

*1074
Walter:
1) total community assets due............................................ $48,516.65
2) house & lot: 2108 Kelly Street........................................ ($25,000.00)
3) rent collected: 2108 Kelly Street..................................... ($11,365.00)
4) rent collected: 17 Tennessee Avenue................................... ($ 7,689.69)
5) Rapides Bank checking account......................................... ($ 1,177.62)
 ==============
TOTAL......................................................... $ 3,484.34

Accordingly, Mabel is hereby ordered to pay Walter $3,484.34 so that the disparity derived by the community property partition apportionment will be offset.

Community Asset Calculation
Walter's final error assignment is made moot by our analysis and reapportionment of the litigants' rental collections.

CONCLUSION
The trial court's judgment is amended insofar as the number of months used to calculate rent due on the Kelly Street parcel is increased by two (2) and multiplied by $200.00. Likewise, the community rent collection figures are reapportioned. The recalculations compel Mabel Nichols to pay the amended sum of $3,484.34 to Walter Nichols. All other relief requested by defendant-appellant is denied. The costs of this appeal are split equally between the parties.
AMENDED & AFFIRMED.
NOTES
[1] 1983 : $ 55 × 6 mos May, June, July, August, September, & October
 1983 : $200 × 2 mos November & December
 1984-1992 : $200 × 108 mos
 1993 : $200 × 2 mos January & February